PIERRE DAVEY *v.* PEPPERIDGE FARMS, INC., ET AL.

COTTER, C. J., LOISELLE, BOGDANSKI, PETERS and F. HENNESSY, Js.

Argued February 6—decision released May 6, 1980

*Robert R. Sheldon,* with whom, on the brief, was *T. Paul Tremont,* for the appellant (plaintiff).

*William F. Gallagher,* with whom were *Elizabeth A. Dorsey* and, on the brief, *John R. McGrail,* for the appellee (defendant Leroy A. Spinner).

BOGDANSKI, J. On December 19, 1975, the plaintiff brought an action in negligence against Pepperidge Farms, Inc., Harry Maring, Jr., Inc., the

Connecticut Light and Power Company, Dico-Side-O-Matic Hoist Company and Leroy A. Spinner. On August 8, 1979, the trial court granted the defendant Spinner's motion for summary judgment. From that judgment, the plaintiff has appealed.

The uncontested facts are as follows: On March 8, 1974, the plaintiff was instructed by his employer, the Milford Concrete Company, to deliver eight concrete blocks to the premises of the defendant Pepperidge Farms. In making the delivery the plaintiff used a flatbed truck which was equipped with a hydraulic hoist. In order to operate the hoist, the truck's engine had to be running. The actual movement of the hoist, however, was controlled either by means of switches from the truck bed or by hand-held switches attached to a twenty foot cable.

In the course of unloading the concrete blocks, the hydraulic hoist became stuck in an upright position. The plaintiff telephoned his employer and asked for assistance. The employer immediately dispatched the defendant Spinner, a mechanic and fellow employee, to the site. Spinner checked the hoist and decided that the truck and hoist had to be returned to the Milford plant for repairs. To do so, however, required that the hoist be swung around to the right.

At this point the defendant Spinner was standing on the truck bed facing the rear of the truck and was manipulating the hydraulic controls. The plaintiff was standing on the ground, to the rear of the driver's side of the vehicle, facing Spinner, and holding the remote control switch. Spinner directed the plaintiff to "[b]oom [the hoist] right." The

plaintiff then pressed the toggle switch thereby causing the hoist to strike high tension wires. As a result the plaintiff sustained severe injuries.

The trial court took note of the fact that where an employee is injured by the negligence of a fellow employee, the sole remedy is under the Workmen's Compensation Act; General Statutes §§ 31-275 through 31-355; except where the negligence is in the operation of a motor vehicle as defined in § 14-1 of the General Statutes. The court then concluded that since the defendant Spinner did not fall within the statutory definition of "operator," the plaintiff's action against him was thereby precluded. The trial court further found that there was no genuine issue as to any material fact which would preclude summary judgment. On appeal, the plaintiff challenges the validity of the court's conclusions.

Section 31-293a of the Workmen's Compensation Act provides in relevant part: "If an employee . . . has a right to benefits . . . on account of injury . . . caused by the negligence or wrong of a fellow employee, such right shall be the exclusive remedy of such injured employee *except for negligence in the operation of a motor vehicle as defined in section 14-1 . . . .*" (Emphasis added.)

Section 14-1 provides: "Terms . . . shall be construed as follows, unless another meaning is clearly apparent from the language or context or unless such construction is inconsistent with the manifest intention of the general assembly: . . . (32) 'Operator' or 'driver' means any person who operates a motor vehicle or who steers or directs the course of a motor vehicle which is being towed by another motor vehicle." On the basis of this definition, the

trial court held that the defendant Spinner was not an "operator"[1] of a motor vehicle at the time of the accident.

The plaintiff, in order to persuade this court to adopt a definition of "operation" which is broader than that provided in § 14-1 (32) sets forth a rule of statutory construction to the effect that where no statutory intention appears, preferential and qualifying words and phrases refer solely to the last antecedent. He then claims that the last antecedent in § 31-293a is "motor vehicle" not "operation."

Even if we accept the proposition that it is to the definition of "motor vehicle" that the court must turn, the plaintiff cannot prevail. While defining "motor vehicle" as any vehicle propelled or drawn by any power other than muscular, § 14-1 (26)[2] specifically excludes any vehicle "not suitable for operation on a highway." The hoist alone is clearly not suitable for operation on a highway. Moreover, the hoist was controlled not by the truck motor, but by the remote controls which were held by the plaintiff

[1] While it is true that "operation" is not defined in General Statutes § 14-1, the cases clearly indicate that operation as it refers to a motor vehicle relates to the driving or movement of the vehicle itself or a circumstance resulting from the movement of the vehicle. See *Plunkett* v. *Nationwide Mutual Ins. Co.*, 150 Conn. 203, 209, 187 A.2d 754 (1963); *Reetz* v. *Mansfield*, 119 Conn. 563, 178 A. 53 (1935); *Stroud* v. *Water Commissioners*, 90 Conn. 412, 97 A. 336 (1916). There is nothing to suggest that the use of any mechanical or electrical device not an integral part of the motor vehicle being driven can be considered operation of a motor vehicle.

[2] The term "motor vehicle" is defined in General Statutes § 14-1 (26) as follows:

" 'Motor vehicle' means any vehicle which is propelled or drawn by any power other than muscular, except aircraft, motor boats, road rollers, baggage trucks used about railroad stations or other mass transit facilities, electric battery-operated wheel chairs when operated by physically handicapped persons at speeds not exceeding fifteen miles per hour, golf carts operated on highways solely for the pur-

on the ground. The hoist, therefore, cannot be considered a motor vehicle within the meaning of the statute.

Furthermore, even if we assume that the hoist does constitute a motor vehicle, the plaintiff's argument that the defendant was in fact the "operator" of it by virtue of his telling the plaintiff to move the hoist lacks merit. See *Plunkett* v. *Nationwide Mutual Ins. Co.,* 150 Conn. 203, 209, 187 A.2d 754 (1963). The facts presented in the present case do not give rise to an issue of control.[3] The plaintiff was not only the driver of the truck on which the hoist was mounted, but was employed specifically to operate that hoist. He knew at least as much about the operation of the hoist as did the defendant, a mechanic. No allegation was made that the defendant Spinner had any supervisory authority over the plaintiff in the course of their employment. The verbal exchange between the defendant and the plaintiff concerning the movement of the hoist was clearly part of a joint effort to get the truck back to the company for repairs rather than an order from a superior to a subordinate. On the basis of the facts, the alter ego principle is not applicable.

There is no error.

In this opinion the other judges concurred.

pose of crossing from one part of the golf course to another, agricultural tractors, farm implements, such vehicles as run only upon rails or tracks, self-propelled snow plows, snow blowers and lawn mowers, when used for the purposes for which they were designed and operated at speeds not exceeding four miles per hour, whether or not the operator rides on or walks behind such equipment, bicycles with helper motors as defined in section 14-286 and any other vehicle not suitable for operation on a highway."

[3] In *Reetz* v. *Mansfield,* 119 Conn. 563, 178 A. 53 (1935), this court applied the alter ego principle to hold liable an owner of an automobile who was sitting beside the driver and who grabbed the wheel and was holding it at the time of the accident.